United States District Court
Southern District of Texas
**ENTERED**
March 01, 2022
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| WALTER C. SAENZ, *et al*, | § |
| | § |
| Plaintiffs, | § |
| VS. | § CIVIL ACTION NO. 4:21-CV-661 |
| | § |
| U. S. BANK, N.A., | § |
| | § |
| Defendant. | § |

## ORDER

Pending before the Court is the Defendant U.S. Bank, N.A.'s (the "Bank") Motion for Summary Judgment (Doc. No. 27). The Plaintiffs have filed a response (Doc. No. 31) and the Bank has filed a reply (Doc. No. 32). After reviewing the briefing and applicable law, the Court grants the motion.

### I.   Background

This case arises out of the sale of a motorhome ("RV"). In 2019, Robert Krajicek, II (the "Borrower") obtained a loan from the Bank in the amount of $283,519.19 to purchase a motorhome. The next year the Borrower defaulted on his payments to the Bank and informed the Bank that he would be surrendering the RV. The amount left on the loan was approximately $285,000. The Borrower left the RV at an RV Station in Brazos County, Texas. A representative of the RV Station contacted Plaintiff Mars Recovery to ask it to remove the RV. Mars Recovery, which is owned by Plaintiff Walter C. Saenz ("Saenz"), removed the RV from the RV Station and towed it to its own storage facility.

The Plaintiffs allege, but the Bank disputes, that Mars Recovery sent all the statutorily required pre-sale notices to the Bank as lienholder. The Plaintiffs further allege that the Bank took

no action in response to the notices. Saenz then bought the RV from Mars Recovery. Eventually, the Bank did express to Mars Recovery that the Bank intended to recover the RV. The parties could not reach an agreement on who owned the RV and what amount would be sufficient for the Plaintiffs to surrender the RV to the Bank or settle the dispute. Accordingly, the Plaintiffs filed the instant action in Texas state court alleging multiple causes of action.

The Bank removed to this Court and the Plaintiffs amended their complaint to allege only a claim of declaratory judgment, seeking a declaration from this Court that: (a) the pre-sale notices sent to the Bank were valid and effective under the Texas Vehicle Storage Facility Act; (b) the Bank abandoned the RV when it failed to respond to the notices; (c) the sale of the RV by Mars Recovery to Saenz is valid; (d) the instruments reflecting such sale are valid; (e) "Saenz and/or Mars Recovery are presently the owner(s) of the motorhome"; (f) neither the Borrower not the Bank is presently the owner of the RV; (g) the Bank no longer has a lien on the RV; (h) Saenz's possession of the RV is lawful; (i) the Bank is not entitled to possession of the RV; and (j) neither Saenz nor Mars Recovery breached any settlement agreement with the Bank. (Doc. No. 15 at 5).

The Bank filed counterclaims against the Plaintiffs for fraud, conversion, unjust enrichment, quiet title, violation of the Texas Theft Liability Act (TTLA), violation of the Texas Vehicle Storage Facility Act (TVSFA), breach of contract, and declaratory judgment. (Doc. No. 2). The Court entered a preliminary injunction to which the parties had agreed that enjoined the Plaintiffs from, among others, selling or moving the motorhome throughout the duration of this litigation. (Doc. No. 13)

The Bank moved to dismiss the Plaintiffs' Amended Complaint. (Doc. No. 15). Plaintiff responded in opposition (Doc. No. 19), and the Bank filed a reply in support. (Doc. No. 21). This Court determined that the arguments made would be better suited for summary judgment and

Draft #2

denied the Bank's Motion to Dismiss. (Doc. No. 26). The Bank then filed the Motion for Summary Judgment (Doc. No. 27).

## II.     Legal Standard

Summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "The movant bears the burden of identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact." *Triple Tee Golf, Inc. v. Nike, Inc.*, 485 F.3d 253, 261 (5th Cir. 2007) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–25 (1986)).

Once a movant submits a properly supported motion, the burden shifts to the non-movant to show that the Court should not grant the motion. *Celotex*, 477 U.S. at 321–25. The non-movant then must provide specific facts showing that there is a genuine dispute. *Id.* at 324; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). A dispute about a material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court must draw all reasonable inferences in the light most favorable to the nonmoving party in deciding a summary judgment motion. *Id.* at 255. The key question on summary judgment is whether there is evidence raising an issue of material fact upon which a hypothetical, reasonable factfinder could find in favor of the nonmoving party. *Id.* at 248.

Additionally, the Declaratory Judgment Act, 28 U.S.C. § 2201, alone does not provide a court with jurisdiction. *California v. Texas*, 141 S. Ct. 2104, 2115 (2021). "Instead, just like suits for every other type of remedy, declaratory-judgment actions must satisfy Article III's case-or-controversy requirement." *Id.* "At a minimum, this means that the dispute must be real and substantial and admit of specific relief through a decree of a conclusive character, as distinguished

Draft #2

from an opinion advising what the law would be upon a hypothetical state of facts." *Id.* at 2115–16 (quotations omitted).

### III. Standing

In its Motion, Defendant argues that Plaintiff Mars Recovery lacks standing to assert any claims related to the RV. (Doc. No. 27 at 23). Thus, the Court must first determine whether it has jurisdiction to resolve the Bank's Motion.

1. *Article III Standing*

Article III of the United States Constitution requires that parties seeking to resolve disputes before a federal court present actual "Cases" or "Controversies." U.S. Const. art. III, § 2, cl. 1. This requirement limits "the business of federal courts to questions presented in an adversary context and in a form historically viewed as capable of resolution through the judicial process." *Flast v. Cohen*, 392 U.S. 83, 95 (1968). Plaintiffs, as the parties invoking the Court's jurisdiction, bear the burden of satisfying the Article III requirement by demonstrating that they have standing to adjudicate their claims in federal court. *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). The "irreducible constitutional minimum of standing contains three elements." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). First, a plaintiff must demonstrate that they have "suffered a concrete and particularized injury that is either actual or imminent." *Massachusetts v. E.P.A.*, 549 U.S. 497, 517 (2007). Second, a plaintiff must show that there is a causal connection between the alleged injury and the complained-of conduct—essentially, that "the injury is fairly traceable to the defendant." *Id.* Finally, standing requires that the injury "be 'likely,' as opposed to merely 'speculative,' that the injury will be redressed by a favorable decision.'" *Lujan*, 504 U.S. at 560 (quoting *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 41–42 (1976)).

### 2. *Prudential Standing*

In addition to these three constitutional requirements, "the federal judiciary has also adhered to a set of 'prudential' principles that bear on the question of standing." *Valley Forge Christian Coll. v. Americans United for Separation of Church & State, Inc.*, 454 U.S. 464, 474 (1982). Many opinions refer to those principles as being under the banner of "prudential" standing. *See, e.g., Bennett v. Spear*, 520 U.S. 154, 164 (1997). First, the Supreme Court has held that when the "asserted harm is a 'generalized grievance' shared in substantially equal measure by all or a large class of citizens, that harm alone does not warrant exercise of jurisdiction." *Id.* Rather, these "abstract questions of wide public significance" are more appropriately left to the representative branches of the federal government. *Warth v. Seldin*, 422 U.S. 490, 500 (1975). Second, the plaintiffs must come within the "zone of interests to be protected or regulated by the statute or constitutional guarantee in question." *Valley Forge*, 454 U.S. at 475 (quoting *Ass'n of Data Processing Serv. Organizations, Inc. v. Camp*, 397 U.S. 150, 153 (1970)). Finally, a plaintiff "must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." *Id.* at 474 (quoting *Warth*, 422 U.S. at 499).

## B. Resolution of Standing Questions

Questions regarding constitutional and prudential standing implicate the court's subject-matter jurisdiction; thus, challenges to standing are evaluated as a Rule 12(b)(1) motion to dismiss for lack of subject-matter jurisdiction. *See* Fed. R. Civ. P. 12(b)(1). When evaluating subject-matter jurisdiction, the court may consider "(1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Ramming*, 281 F.3d at 161. The court's analysis also depends on whether the challenging party has a made a "facial" or "factual"

attack on jurisdiction. *See Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1981). A facial challenge consists of only a Rule 12(b)(1) motion without any accompanying evidence; for this challenge, the court "is required merely to look to the sufficiency of the allegations in the complaint because they are presumed to be true." *Id.*

Conversely, when making a factual attack on the court's jurisdiction, the challenging party may submit affidavits, testimony, or other evidentiary materials to support its claims. *Id.* A factual attack requires the responding plaintiff "to submit facts through some evidentiary method" and prove "by a preponderance of the evidence that the trial court does have subject matter jurisdiction." *Id.*

The Court finds that Plaintiff has standing to bring this suit. Plaintiffs seeks a declaratory judgment that the pre-sale notices were valid and/or effective, that the motorhome was abandoned, that they are the present owners of the motorhome, that Defendants are not the owners of the motorhome, that Saenz is in lawful possession of the motorhome, etc. These questions are borne out of an actual controversy that is redressable by the Court. The Court further finds no issues with respect to the requirements of prudential standing. As such, Plaintiffs have standing in this case.

### IV. Analysis

The Bank moves for summary judgment on several grounds. The Court will address each ground individually.

<u>A. Notice Sufficiency</u>

The Bank next argues that Plaintiffs' first pre-sale notice ("First Notice") and second pre-sale notice ("Second Notice") were deficient because they did not comply with the "Contents of Notice" requirements under Texas law, and consequently, declaratory judgment is inappropriate.

Draft #2

1. *First Notice*

According to Texas law:

> the operator of a vehicle storage facility who receives a vehicle that is registered in this state and that is towed to the facility for storage shall send a written notice to the registered owner and the primary lienholder of the vehicle no later than the fifth day after the date but not earlier than 24 hours after the date the operator receives the vehicle

Tex. Occ. Code, Title 14, Subchapter D, § 2303.151(a). Texas requires that such pre-sale notices sent by mail "must include" several pieces of information, including "the date the vehicle was accepted for storage" and "the facility license number preceded by 'Texas Department of Licensing and Regulation Vehicle Storage Facility License Number' or 'TDLR VSF Lic. No.'" *Id.* at § 2303.153(a).

The Bank argues that the First Notice fails to comply with the statutory requirements for two reasons: (1) the "First Notice does not contain the date that Mars Recovery accepted the RV for storage at its vehicle storage facility" pursuant to § 2303.153(a)(1), but instead only lists the impound date, and (2) the "First Notice does not contain 'Texas Department of Licensing and Regulation Vehicle Storage Facility License Number' or 'TDLR VSF Lic. No.' before the facility license number" pursuant to § 2303.153(a)(7). (*See* Doc. No. 27 at 15–17). The Bank further argues that Plaintiffs admit that the First Notice did not have the correct date on which Mars accepted the RV, nor did it contain the required language preceding Mars's facility license number, pointing to Plaintiff's attorney's email which acknowledged the deficient notice form. (*See* Doc. No. 15-4 at 10).

In response, Plaintiffs argue that while they may not have strictly complied with each of the notice requirements per § 2303.153(a), the facts demonstrate "substantial compliance" with the statutory requirements. (Doc. No. 31 at 5). To support the argument that "substantial

7

compliance" is sufficient, Plaintiffs point to the language of § 2303.151(f)(3), which reads "[i]f the operator of a vehicle storage facility sends a notice required under this section after the time prescribed by Subsection (a) or (b) . . . the ability of the operator to seek foreclosure of a lien for storage charges on the vehicle that is the subject of the notice is not affected. Tex. Occ. Code, Title 14, Subchapter D, § 2303.151(f)(3). Plaintiffs contend that this language suggests that substantial compliance in sending notices is sufficient to provide actual notice because the owner/lienholder would be able to recover the vehicle in question given the information provided.

The Court finds that there is no genuine issue of material fact that the First Notice did not comply with all of the requirements of Tex. Occ. Code, Title 14, Subchapter D, § 2303.151 *et seq.* Plaintiff offers no evidence to dispute the Bank's contention that the First Notice lacked either the date on which the RV was accepted for storage, nor the requisite preceding language to identify the facility license number. Moreover, Plaintiff fails to provide any evidence to suggest that "substantial compliance"—as opposed to "strict compliance"—is sufficient to satisfy the statutory requirements. The Bank, however, notes that the statute lacks any mention of "substantial compliance," unlike other statutes which explicitly allow for substantial compliance. *See* Tex. Occ. Code § 2001.314(c). As there is not genuine dispute of material fact on this issue, the Court grants the Bank's Motion for Summary Judgment with respect to the First Notice and finds that Plaintiffs are not entitled to a declaratory judgment for the First Notice.

2. *Second Notice*

If a vehicle is not claimed after the first notice is sent, Texas law requires a second notice be sent to the owner and/or the lienholder prior to any sale. Tex. Occ. Code, Title 14, Subchapter D, § 2303.154 *et seq.* "Not earlier than the 15th day and before the 21st day after the date notice is mailed or published under Section 2303.151 or 2303.152, the operator of a vehicle storage

8

facility shall send a second notice to the registered owner and each recorded lienholder of the vehicle" if law enforcement is made aware of the vehicle. *Id.* at § 2303.154(d). Additionally, this second pre-sale notice, among other things, "must include . . . a statement of the right of the facility to dispose of the vehicle under Section 2303.157." *Id.* at § 2303.154(b)(2).

The Bank argues first that the Second Notice was prematurely sent, because it was sent on November 4, 2020, and that the earliest it could be sent was November 5, 2020, which was fifteen days after the First Notice was sent. There appears to be some discrepancy as to the precise date the First Notice was mailed, reflecting "the date notice was dispatched versus date notice was postmarked." (Doc. No. 31 at 6). Furthermore, Plaintiffs curiously suggest that the Second Notice was actually mailed on November 3, 2020, which would be premature whether the First Notice was sent on October 20 or October 21. Given this confusion, the Court finds it unnecessary to decide on the § 2303.154(d) issue at this juncture.

With respect to the Bank's contention that Plaintiffs failed to comply with § 2303.154(b)(2), Plaintiffs argue once again that it "substantially complied" with the statutory requirements, and that the Court should not disregard its efforts to comply with the statute because they "missed one piece of information in a required notice." (Doc. No. 31 at 7). Notably, Plaintiffs do not provide any evidence, nor even attempt to argue, that it included "a statement of the right of the facility to dispose of the vehicle under Section 2302.157" as required by the statute. *See* § 2303.154(b)(2).

The Court finds that there is no genuine issue of material fact that the Second Notice did not comply with all of the requirements of Tex. Occ. Code, Title 14, Subchapter D, § 2303.154 *et seq.* Plaintiffs offer no evidence to dispute the Bank's contention that the Second Notice lacked a "statement of the right of the facility to dispose of the vehicle under Section 2302.157" as required

9

by the statute. Moreover, Plaintiffs fail to provide any evidence to suggest that "substantial compliance"—as opposed to "strict compliance"—is sufficient to satisfy the statutory requirements. The Bank, however, notes that the statute lacks any mention of "substantial compliance," unlike other statutes which explicitly allow for substantial compliance. *See* Tex. Occ. Code § 2001.314(c). As there is not genuine dispute of material fact on this issue, the Court grants the Bank's Motion for Summary Judgment with respect to the Second Notice and finds that Plaintiffs are not entitled to a declaratory judgment for the Second Notice.

### B. Abandonment of RV

The Bank also argues that the RV was not legally abandoned at the time Plaintiffs reported it as abandoned and consequently, declaratory judgment on this point is inappropriate. "If a vehicle is not claimed by a person permitted to claim the vehicle before the 10th day after the date notice is mailed . . . the operator of the vehicle storage facility shall consider the vehicle to be abandoned, and . . . report the abandonment to the law enforcement agency" with jurisdiction. Tex. Occ. Code Ann. § 2303.154(a).

The Bank argues that the summary judgment evidence makes clear that Plaintiffs reported the vehicle as abandoned prior to the tenth day that the First Notice was mailed, and therefore, insufficiently declared the RV abandoned. The Bank first notes that the First Notice was mailed on October 21, 2020. (Doc. No. 15-1 at 3). It follows, according to the Bank, that the RV could not have been considered "abandoned" until ten days after this date, which was October 31, 2020. (Doc. No. 27 at 19). The Bank then highlights Plaintiffs' "10 Day Abandoned Report" filed with the Montgomery County Sheriff, which was dated October 29, 2020—two days prior to the earliest date which the RV could have been officially deemed "abandoned." (Doc. No. 15-2).

10

Plaintiffs, in response, once again argue that they "substantially complied" with the statutory requirements, but do not point the Court to any evidence or authority that either demonstrates a "substantially complied" standard is sufficient, or that suggests that the abandonment report was not filed prematurely.

The Court finds that no genuine dispute of material fact exists on this issue. The evidence presented makes clear that Plaintiffs prematurely considered the vehicle to be abandoned, and therefore, they are not entitled to declaratory judgment on this point. The Bank's Motion for Summary Judgment is granted with respect to the abandonment of the RV issue.

C. Sale of the RV and Instruments Related Thereto

The Bank further contends that the sale of the RV was invalid because (a) Plaintiff Mars Recovery sold the RV earlier than permitted by statute; (b) both the First Notice and Second Notice were invalid; and (c) the RV was not sold at a public sale as required by statute.

Texas law states that "[t]he operator of a vehicle storage facility may dispose of a vehicle for which notice is given under Section 2303.154 if, before the 30th day after the date notice is mailed, the vehicle is not: (1) claimed by a person entitled to claim the vehicle; or (2) taken into custody by a law enforcement agency" under the Transportation Code. § 2303.1579(a).

The Bank argues that Plaintiff Mars Recovery prematurely sold the RV on December 3, 2020, less than 30 days after the Second Notice was mailed on November 4, 2020. (Doc. No. 15-3 at 3). Plaintiffs offer no evidence or case law to dispute this claim, nor any argument against it, in its Response. (*See* Doc. No. 31). Furthermore, the Bank argues that the sale of the RV was not a public sale pursuant to § 2303.157(b). As evidence, the Bank points to Plaintiffs' failure to deny that Plaintiff Saenz "advised that no sale date had been set" as of December 2, 2020, and Plaintiffs' subsequent admission that Saenz had an application for title on the RV the very next day. (*See*

11

Doc. No. 2 at 7; Doc. No. 14 at 4). Plaintiffs have failed to provide any evidence or argument in its Response to demonstrate that the sale was public. (*See* Doc. No. 31). As such, the Court finds that there is no genuine dispute of material fact as it relates to the sale of the RV and that declaratory judgment on this point is inappropriate. The Court grants the Bank's Motion for Summary Judgment on this issue.

### D. Plaintiffs' Affirmative Defenses

Additionally, the Bank argues that it is entitled to summary judgment dismissing Plaintiffs' affirmative defenses because Plaintiffs' have offered no evidence to support them. (Doc. No. 27 at 23–24. Plaintiffs did not address this argument in their Response. (*See* Doc. No. 31). "When a plaintiff fails to defend a claim in response to a motion to dismiss or summary judgment motion, the claim is deemed abandoned." *Arias v. Wells Fargo Bank, N.A.*, No. 3:18-cv-418, 2019 WL 2770160, at *2 (N.D. Tex. July 2, 2019); *see also Vela v. City of Houston*, 276 F.3d 659, 679 (5th Cir. 2001). The Court finds that Plaintiffs, by failing to address or provide evidence to support their affirmative defenses in their Response, have abandoned them. The Court grants the Bank's Motion for Summary Judgment on this issue.

### V. Conclusion

For the foregoing reasons, Defendants' Motion for Summary Judgment is granted. (Doc. No. 27).

Signed at Houston, Texas, this 1st day of March, 2022.

Andrew S. Hanen
United States District Judge